## Case No. 4,247.

### EARLE v. SAWYER.

[4 Mason, 1;[1] 1 Robb, Pat. Cas. 490; Merw. Pat. Inv. 502.]

Circuit Court, D. Massachusetts. Oct. Term, 1825.

STORY, Circuit Justice. The plaintiff, on the 28th of December, 1822, procured letters patent for "a new and useful improvement in the machinery for manufacturing shingles, called the 'shingle mill,'" and filed a specification in the patent office, a copy of which, with the explanatory drawings and figures referred to therein, is annexed to the letters patent. In this specification, he describes his invention as follows: "Said improvement consists in such new arrangement and change of parts of my former machine for the like purpose; for which letters patent were granted to me

---

[1] [Reported by William P. Mason, Esq. Merw. Pat. Inv. 502, contains only a partial report.]

by the president of the United States, bearing date the third day of November, A. D. 1813, as to admit the use and application in said machine of the circular saw, instead of the perpendicular saw heretofore used, and the substitution of such other parts as are rendered necessary by these alterations, in order to effect the required timing and proper movements of the respective parts thus altered, in connexion with other parts of said machine." He then proceeds to describe these alterations with great minuteness, and annexes drawings of the whole machine with the new combination of parts, and distinguishes in those drawings, by appropriate colouring and descriptions, what is new from what belonged to the old machine. The former machine, here alluded to and patented by the plaintiff, is a machine for manufacturing shingles, called the "improved shingle mill," in which a perpendicular saw, with the appropriate machinery to move it, was exclusively used. The present patent claims, as an invention of the plaintiff, the substitution of a circular saw, with the appropriate machinery in the old machine, for the like purpose of sawing shingles. With the exception of this substitution, all the other parts of the old machine, such as the carriage to move the block to be sawed, and the alternate motion on a diagonal line of each end of it, so as to present first a thick and then a thin end to the saw, were unaltered.

At the trial it was proved, that the defendant had made and used a machine with a circular saw in substance like the plaintiff's, though with some slight variations of form, so as to cover up the evasion of the patent. The defendant had previously applied to the plaintiff to buy one of his improved shingle mills for use in the town where he resided, which the plaintiff declined upon the ground (as was suggested), that he had already entered into some contract with other persons for the exclusive use there. The defendant, upon that refusal, intimated that the plaintiff would find that other persons could make shingle mills as well as he; and soon afterwards the defendant had his constructed and put in operation.

There was no evidence in the case to show, that any person had ever, before the plaintiff's asserted invention, applied a circular saw in any manner to the plaintiff's old machine. But the whole evidence established, that the first application was suggested by him, and first put in operation by him, before he obtained his patent. Some testimony was offered to prove, that in a machine for cutting clapboards the circular saw had been in use in Brunswick in Maine for several years, but the testimony as to the structure of this machine, and its identity with the plaintiff's invention, as well as its priority in point of time, was so loose and uncertain and unsatisfactory, that though it

was left to the jury, it was not deemed of any serious importance in the cause.

There was considerable conflict of testimony in the cause (which was left to the jury), as to the question whether the application of the circular saw to the old machine was an invention or not, scientific witnesses differing in opinion on the subject. It was proved that circular saws were in use before, for the purpose of veneering and sawing picture frames, but they were small; and it was testified, that the machinery, by which a circular saw should be substituted for a perpendicular saw, in the plaintiff's old machine, was so obvious to mechanics, that one of ordinary skill, upon the suggestion being made to him, could scarcely fail to apply it in the mode which the plaintiff had applied his. This testimony was encountered by suggestions and proofs of the difficulties, which the plaintiff himself (who is an ingenious mechanic) had encountered in making his own substitution. But this also was left for the consideration of the jury.

It was proved that the plaintiff's old machine sold for 60 or 70 dollars, and his machine with the improvement sold for 150 or 200 dollars.

The jury found a verdict for the plaintiff for 300 dollars; and the defendant has applied to the court for a new trial, for reasons which he has filed in the cause, upon which I shall have occasion to comment, only stating at present, that the opinions imputed to the court are not admitted to be accurately laid down, although the inaccuracy is doubtless unintentional on the part of the counsel for the defendant. The original reasons assigned for the new trial, state the following as misdirections of the court: 1. That if any man makes or constructs a machine, which is new and useful, he is entitled to a patent: 2. That if he makes an improvement in any machine, which improvement is new and useful, he is entitled to a patent: 3. That if the plaintiff were the first to take out the perpendicular saw from his original shingle mill, and put in a circular saw (meaning, I presume, with the proper machinery), that if it be useful (meaning, I presume, new and useful), it is sufficient to entitle him to a patent: 4. That if the plaintiff were the first to apply or combine a circular saw with his original shingle mill for the purpose of making shingles, although the shingle mill were in common use, and the circular saw were in use (meaning, I presume, separately, and not in combination), and there were nothing new in the mode or machinery, by which it was applied (but meaning, I presume, that the combination itself was new), still the plaintiff is entitled to a patent. In the directions thus supposed, with the explanations and additions above inserted, which seem necessary to express the true sense of the propositions, I do not at present perceive any error. But I rather wish to state the real opinions expressed to the jury, with which, upon more mature reflection, I confess myself entirely satisfied.

The main question was, and still is, whether there is any thing new in the improvement patented by the plaintiff. He was already the patentee of the original shingle machine, which operated with a perpendicular or reciprocating saw. The other part of his apparatus for adjusting the logs to be sawed, was very ingenious, but not being in controversy, requires no consideration. By his present patent, he claims to be the inventor of the application of a circular saw, as a substitution for the perpendicular saw. He does not claim (which is very material) to be the inventor of the circular saw, or of any mode or machinery, by which it may be applied to sawing generally, or to sawing logs, or to sawing shingles. He claims to be the inventor of a combination of it in a particular manner with his old machine, for the purpose of sawing shingles. In what manner is the claim met? Not by showing that any other person ever thought of, or invented such combination before, for it is admitted that the plaintiff is the first person who conceived or executed it; but by showing, that he is not the inventor of a circular saw, or of the particular machinery of belts and drums and wheels, &c. by which such a saw is commonly put in operation; and that the combination itself is so simple, that, though new, it deserves not the name of an invention.

The whole argument, upon which this doctrine is attempted to be sustained, is, if I rightly comprehend it, to this effect. It is not sufficient, that a thing is new and useful, to entitle the author of it to a patent. He must do more. He must find it out by mental labor and intellectual creation. If the result of accident, it must be what would not occur to all persons skilled in the art, who wished to produce the same result. There must be some addition to the common stock of knowledge, and not merely the first use of what was known before. The patent act gives a reward for the communication of that, which might be otherwise withholden. An invention is the finding out by some effort of the understanding. The mere putting of two things together, although never done before, is no invention.

It did not appear to me at the trial, and does not appear to me now, that this mode of reasoning upon the metaphysical nature, or the abstract definition of an invention, can justly be applied to cases under the patent act. That act proceeds upon the language of common sense and common life, and has nothing mysterious or equivocal in it. The first section [2] enacts, "that when any person &c. shall allege that he has invented any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvement on any art, machine,

---

[2] Act 1793, c. 11 [1 Stat. 318].

manufacture, or composition of matter, not known or used before the application, &c. it shall be lawful for the secretary of state to cause letters patent to be made out, &c. granting the exclusive right and liberty of making, constructing, using, and vending to others to be used, the said invention or discovery," &c. The thing to be patented is not a mere elementary principle, or intellectual discovery, but a principle put in practice, and applied to some art, machine, manufacture, or composition of matter. It must be new, and not known or used before the application; that is, the party must have found out, created, or constructed some art, machine, &c. or improvement on some art, machine, &c. which had not been previously found out, created, or constructed by any other person. It is of no consequence, whether the thing be simple or complicated; whether it be by accident, or by long, laborious thought, or by an instantaneous flash of mind, that it is first done. The law looks to the fact, and not to the process by which it is accomplished. It gives the first inventor, or discoverer of the thing, the exclusive right, and asks nothing as to the mode or extent of the application of his genius to conceive or execute it. It must also be useful, that is, it must not be noxious or mischievous; but capable of being applied to good purposes; and perhaps it may also be a just interpretation of the law, that it meant to exclude things absolutely frivolous and foolish. But the degree of positive utility is less important in the eye of the law, than some other things, though in regard to the inventor, as a measure of the value of the invention, it is of the highest importance.

The first question then to be asked, in cases of this nature, is, whether the thing has been done before. In case of a machine, whether it has been substantially constructed before; in case of an improvement of a machine, whether that improvement has ever been applied to such a machine before, or whether it is substantially a new combination. If it is new, if it is useful, if it has not been known or used before, it constitutes an invention within the very terms of the act, and, in my judgment, within the very sense and intendment of the legislature. I am utterly at a loss to give any other interpretation of the act; and, indeed, in the very attempt to make that more clear, which is expressed in unambiguous terms in the law itself, there is danger of creating an artificial obscurity. With these views, I did not hesitate to tell the jury at the trial, that the true question for them to decide was, whether the improvement, secured by the patent, had ever been thought of, or applied to the original machine, by any other person, before the plaintiff conceived and executed the combination. If they were of opinion that it had not been, and that he was the author of it, then he was the inventor within the meaning of the act, and entitled to a patent. All the other remarks, introduced as the ground-work of the

motion for a new trial, were mere illustrations of this single principle, which was brought home to the case on trial, by a direct application. My judgment on this point remains unshaken by the subsequent arguments, urged at the bar.

The case of Brunton v. Hawkes, 4 Barn. & Ald. 541, is thought to countenance the doctrine contended for on behalf of the defendant. If it did, it might be very material to consider, whether it could govern in the construction of our own patent act. But, upon the most careful consideration of that case, it does not appear to me to break in at all upon the law, as the court has held it on the present occasion. One question there, was, whether there was any novelty in an alleged improvement in the making of ships' anchors. It was proved, that the same operation had been long known and applied for similar purposes in the adze anchor and the mushroom anchor. The court thought, upon the evidence, the plaintiff's invention, as to the anchor, was not new. Lord Chief Justice Abbott said, "a patent for a machine, each part of which was in use before, but in which the combination of the different parts is new, and a new result is produced, is good, because there is a novelty in the combination. But here the case is perfectly different; formerly three pieces were united together; the plaintiff only unites two; and if the union of those two had been effected in a mode unknown before, as applied in any degree to similar purposes, I should have thought it a good ground for a patent. But, unfortunately, the mode was well known and practised." It strikes me, that the doctrine here laid down is perfectly correct, and such as has been often recognised in this court. And a careful perusal of the opinions of all the judges, in that case, will fortify, in no small degree, what has been delivered by this court in the present trial. How, indeed, can it be possible, that an English court should deem some intellectual labour, beyond the novelty of the combination, necessary for a patent, when it is the acknowledged law of England (different in that respect from our own), that the first importer of an invention, known and used in foreign parts, may be entitled to a patent as the inventor in England? What of intellect is employed in the mere importation of a known machine? An inventor, in the sense of the English law, is the first maker, or constructor, or introducer, in England.

I will now briefly notice some other grounds in support of the motion for a new trial, which have been filed at a later period, and relied upon at the argument. I shall not dwell on the first and second reasons, because they do not correctly state the facts connected with the opinion of the court. They rest upon suggestions respecting the clapboard machine, and its supposed identity with the plaintiff's machine. In summing up to the jury, the court took notice of

the very imperfect and loose testimony on this point, brought suddenly into the cause, at its very close, and suggested to the jury, whether under the circumstances they could, upon such testimony, believe, that the machine for sawing clapboards was identical with the plaintiff's improved machine for sawing shingles; and added, that the proof of that fact rested on the defendant, as also, that it was in existence before the plaintiff's invention. The court further stated, that unless the machine were substantially the same, in principle and operation, no objection could arise from this source to the plaintiff's patent, since he did not claim an improvement upon any or all clapboard machines, but only an improvement upon his original shingle machine. To this opinion also my mind still adheres.

Another ground is, that the court directed the jury, that the drawings annexed, and referred to in the specification, constituted a part thereof; and that they might be resorted to, to aid the description, and to distinguish the thing patented from other things known before. In point of fact, the drawings were annexed to the specification in the patent, and it made perpetual references to them, distinguishing thereby the new parts from the old, so that it was unintelligible without them. The court, therefore, in the first part of the direction, did no more than state the fact, as it was; and the other part was correct, unless the description must be wholly in writing. The argument now is, that by the very terms of the patent act, there must be a written description (without any reference to drawings), in such full, clear, and exact terms, as to distinguish the things patented from all other things; and that, in case of a machine, the act requires drawings in addition thereto. For this position, the case, Ex parte Fox, 1 Ves. & B. 67, before Lord Eldon, has been cited. It was a petition to the lord chancellor for the grant of a patent, against which a caveat had been entered. On hearing the parties, Lord Eldon granted the patent, and on that occasion is reported to have said, "I take it to be clear, that a man may, if he chooses, annex to his specification a picture or a model, descriptive of it; but his specification must in itself be sufficient, or I apprehend it will be bad." As I understand this language, it is not intended to assert the doctrine for which it is cited. It means, that the specification must in itself be sufficient, and that the mere annexation of a picture or model will not help any defect in the specification. This may be true, where such picture or model is not referred to, as constituting a part of the specification itself. But if the explanations of the specification call for the drawings, and refer to them as a component part in the description, they are just as much a part of the specification, as if they were placed in the body of the specification. Indeed, in many cases it would be impracticable to give a full and accurate description of the form, adjustments, and apparatus of very nice and delicate machinery, without drawings of some of the parts, as every thing might depend on size, position, and peculiar shape. Lord Eldon could not have meant, that if drawings and figures were necessary to a full description of a machine in the specification, there was still some stubborn rule of law prohibiting it. That would be to require the end, and yet to refuse the means. One of the objections in Boulton v. Bull. 2 H. Bl. 463, was, that the specification was imperfect, and it was pressed, that there ought to have been drawings to explain the machinery. How was this objection met? Not by stating, that by law no explanatory drawings would help a specification, even if referred to in it, but by showing the specification sufficient without them. Mr. Justice Rooke said (page 480), "As to the objection of a want of a drawing or model, that at first struck me as of great weight. I thought it would be difficult to ascertain, what was an infringement of a method, if there was no additional representation of the improvement, or thing methodised." "If they (the jury) can understand it without a model, I am not aware of any rule of law, which requires a model or drawing to be set forth, or which makes void an intelligible specification of a mechanical improvement, merely because no drawing or model is annexed." See, also, Davies, Pat. p. 440, and Bovill v. Moore, 2 Marsh. 211; Eden, Inj. 249, 260.

It seems to me then there is no ground for this objection to the charge, even upon the law of patents in England, where the specification constitutes no part of the patent itself, but is required by a proviso in every grant, to be enrolled in the court of chancery, within a limited time, and particularly to describe and ascertain the nature of the invention, and in what manner the same is to be performed. Davies, Pat. 8, 34. But how stands our own law on this subject; for by this the question must, after all, be decided? The patent act requires, that the inventor "shall deliver a written description of his invention, and of the manner of using, or process of compounding the same, in such full, clear, and exact terms, as to distinguish the same from all other things before known, &c., &c.; and in the case of a machine, he shall fully explain the principle and the several modes in which he has contemplated the application of that principle or character, by which it may be distinguished from other inventions; and he shall accompany the whole with drawings and written references, where the nature of the case admits of drawings," &c. This is an explicit direction to annex drawings, where the nature of the case admits of them, with written references; and when so annexed, they become part of the written description required by the act. They may be indispensable to distinguish

the thing patented from other things before known. Surely, then, the act could not intend studiously to exclude them as part of the written description. That would be to require the end and deny the means.

I pass over some other grounds, which are not relied on or not proved, to the last assignment of error in the charge of the court. It is, that the court stated the measure of damages to be the price of the 'plaintiff's new machine, after deducting therefrom the price of the plaintiff's old machine. To this objection it is a sufficient answer, that the court gave no such direction to the jury. It was not called upon to express any opinion on the subject. The counsel, on both sides, argued the question of damages at large, and coincided in opinion, that, under the circumstances of the case, if the plaintiff was entitled to any damages, the difference of price between the new and old machine was a fair measure of damages. In cases of this sort, where the damages are open to full inquiry, and where the counsel on both sides are content with a measure prescribed by themselves, it is not usual or necessary, for the court to interfere at all. In summing up to the jury, the difference of price between the new and old machine was suggested to the jury as evidence of the value of the improvement, and its public utility, and it was left open to them as an ingredient in estimating the damages, but without the slightest intimation that they were bound by it. There certainly is no reason for granting a new trial on account of damages, given according to a rule admitted by the party himself to be a proper one in his own case. But in truth the case does not enable the court now to say, that the jury, in their estimate of damages, had the least regard to the price of the machines. They were expressly told by the court, that they were to give the plaintiff his actual damages only; and in what manner they made up their verdict is unknown to us all. There were circumstances in the case calculated to inflame the damages, if the jury should have felt at liberty to go beyond mere compensation for loss; for there was a meditated infringement of the plaintiff's patent; and the principal point of defence appeared to be a mere after thought to excuse the deed.

But I wish to add a few words in relation to the point of law, which the objection suggests, and which is founded upon the decision of this court, in the case of Whittemore v. Cutter [Case No. 17,601]. To that decision, as founded in just principle, I still adhere, although I confess with subdued confidence, since I have reason to believe, that it has not met the entire concurrence of other and abler judicial minds. It has been maintained, by some learned persons, that the price of the invented machine is a proper measure of damages, in cases where there has been a piracy by making and using the machine, because, in such cases, the verdict for the plaintiff entitles the defendant to use the machine subsequently, and in short transfers the right to him in the fullest manner, and in the same way, that a recovery in trover or trespass, for a machine, by operation of law, transfers the right to such machine to the trespasser, for he has paid for it. See Toll. Ex'rs, bk. 2, c. 7, p. 239. If I thought such was the legal operation of a verdict for the plaintiff, in an action for making and using a machine, no objection would very forcibly occur to my mind against the rule. But my difficulty lies here. The patent act gives to the inventor the exclusive right of making and using his invention during the period of fourteen years. But this construction of the law enables any person to acquire that right, by a forced sale, against the patentee, and compels him to sell, as to persons or places, when it may interfere essentially with his permanent interest, and involve him in the breach of prior contracts. Thus the right would not remain exclusive; but the very attempt to enforce it would involve the patentee in the necessity of parting with it. The rule itself too has no merit from its universality of application. How could it apply, when the patentee had never sold the right to any one? How, when the value of the right depended upon the circumstance of the right being confined to a few persons? Where would be the justice of its application, if the invention were of enormous value and profit, if confined to one or two persons, and of very small value if used by the public at large; for the result of the principle would be, that all the public might purchase and use it by a forced judicial sale. On the other hand, cases may occur, where the wrong done to the patentee may very far exceed the price, which he would be willing to take for a limited use by a limited number of persons. These, among others, are difficulties which press on my mind against the adoption of the rule; and where the declaration goes for a user during a limited period, and afterwards the party sues for a user during another and subsequent period, I am unable to perceive, how a verdict and judgment in the former case is a legal bar to a recovery in the second action. The piracy is not the same, nor is the gravamen the same. If indeed the plaintiff, at the trial, consents that the defendant shall have the full benefit of the machine for ever, upon the ground of receiving the full price in damages, and the defendant is content with this arrangement, there may be no solid objection to it in such a case. But I do not yet perceive, how the court can force the defendant to purchase, any more than the plaintiff to sell, the patent right, for the whole period it has to run. The defendant may be an innocent violator of the plaintiff's right; or he may have ceased to use, or to have employment for such a machine. There are other objections alluded to in Whittemore v. Cutter [supra].

Struck with similar difficulties in establishing any general rule to govern cases upon patents, some learned judges have refused to lay down any particular rule of damages, and have left the jury at large to estimate the actual damages according to the circumstances of each particular case. I rather incline to believe this to be the true course. There is a great difference between laying down a special and limited rule, as a true measure of damages, and leaving the subject entirely open, upon the proofs in the cause, for the consideration of the jury. The price of the machine, the nature, actual state, and extent of the use of the plaintiff's invention, and the particular losses, to which he may have been subjected by the piracy, are all proper ingredients to be weighed by the jury in estimating the damages, valere quantum valeant.

Upon the whole, my judgment is, that the motion for a new trial ought to be overruled. Judgment accordingly.