GIBBS *v.* HOEFNER and others.

*(Circuit Court, N. D. New York.* February 1, 1884.)

1. PATENTS—UTILITY.
   A patent will not be declared void for inutility if it possesses any utility whatsoever, even the slightest.
2. SAME—LICENSE TO USE NOT ASSIGNABLE.
   A license to use a patented process at the licensee's place of business, and to associate others with him in such use, is not assignable.

In Equity.

*James S. Gibbs,* complainant in person.

*Adelbert Moot,* for defendant.

COXE, J. The complainant, who is owner of a three-fourths interest in letters patent issued for an improvement in the manufacture of soap, seeks to recover the gains and profits which have accrued to the defendant Hoefner by reason of his alleged infringement. The other defendants are the owners of the remaining one-fourth interest and were impleaded because they declined to join with the complainant. No personal claim is made against them. The patent expired April 25, 1882. Two defenses are interposed upon the merits. The defendant insists—*First,* that the patent is void for want of utility; *second,* that he has not infringed.

1. Was the invention useful within the meaning of the statute? In order to answer the question in favor of the defendant it must be determined that it possessed no utility whatever. If it was useful in any degree, no matter how infinitesimal, the court would not be justified in declaring the patent void. *Lowell* v. *Lewis*, 1 Mason, 183, 186; *Earle* v. *Sawyer*, 4 Mason, 1, 6; *Seymour* v. *Osborne*, 11 Wall. 516, 549; *Wilbur* v. *Beecher*, 2 Blatchf. 132, 137; *Lehnbeuter* v. *Holthaus*, 105 U. S. 94; *Bell* v. *Daniels*, 1 Fisher, 375; *Shaw* v. *Lead Co.* 11 Fed. Rep. 711; *Wheeler* v. *Reaper Co.* 10 Blatchf. 189; *Vance* v. *Campbell*, 1 Fisher, 485; Sim. Pat. 92, 93; Walk. Pat. 52, 53.

Tested by this rule it cannot be said that the patent was void for want of utility.

In addition to the presumption arising from the patent itself, there is evidence that the patented process worked with greater rapidity and produced a larger quantity of soap from the same amount of material than the methods formerly used. One of the witnesses testified that by the new process the work of three days could be accomplished in one, and the principal witness for the defense admits that the yield is slightly more than by "the open-kettle process." If the court were required to determine on this proof which of the two methods referred to is the better, it is not improbable that it would have to conclude that the weight of evidence is decidedly in favor of the older process. But such is not the question.

If the defendant is right in his contention that no merchantable article could be manufactured by the use of the patented process, he will have little difficulty in convincing the master that the award of damages to the complainant should be characterized by unusual frugality. To quote from Walk. Pat., *supra:*

"Patents are never held to be void for want of utility, merely because the things covered by them perform their functions but poorly. In such cases no harm results to the public from the exclusive right, because few will use the invention, and because those who do use it without permission, will seldom or never be obliged to pay for that use, anything beyond the small benefit they may really have realized therefrom."

2. Did the defendant infringe? It is admitted that for several months the patented machine was used in defendant's factory, but he insists that he had the right to use it by reason of his contract with M. B. Sherwood, Jr., and Sherwood's contract with the complainant. On the ninth of June, 1873, the complainant granted to Sherwood a license, known as a "shop right," to operate the patented process at Buffalo, and at all times to associate with him such party or parties as he might desire. In June, 1878, Sherwood, by a written instrument, agreed to deliver to the defendant a bill of sale of all the patented machinery, etc., used in making soap, and give him the right to use it in Erie county so far as he had the power to do so. The consideration was the sum of $800, which the defendant agreed to pay as follows: $100 on the execution of the instrument, $100 in 30

days thereafter, $200 when the profits amounted to that sum, and the remaining $400 when half the profits reached that amount. It is unfortunate that at this time the defendant did not obtain a license from the complainant; he was doubtless misled as to his rights and supposed he was purchasing not only the apparatus but the right to operate it. The court, however, must construe the contract according to its true legal import. Sherwood could, of course, convey no more than he himself possessed. What he possessed was a "shop right" for Buffalo, a mere personal license. It was not assignable and gave him no right to authorize others to use the process, except in the manner expressly stipulated. *Rubber Co.* v. *Goodyear*, 9 Wall. 788; *Troy Fact.* v. *Corning*, 14 How. 193; *Searls* v. *Bouton*, 12 Fed. Rep. 140. After the agreement was executed the machine and fixtures were owned by the defendant. They were operated in his place of business. Sherwood had no title to them; he was not a partner of the defendant or associated in business with him in any legal sense. His only interest was to see that the defendant paid him the $800 pursuant to the terms of the contract. Upon this proof I am constrained to hold that the defendant has infringed.

The other defenses of a technical character have been carefully examined but it is thought that none of them are well founded.

It follows that there must be a decree for the complainant with a reference to a master.