LA RUE v. WESTERN ELECTRIC CO.

*(Circuit Court, S. D. New York. May 16, 1887.)*

1. PATENTS FOR INVENTIONS — IMPROVEMENT IN TELEGRAPH KEYS — CONSTRUCTION OF CLAIM.

Letters patent No. 270,767 were granted January 16, 1883, to Edgar A. Edwards, for an improvement in telegraph keys, being a substitution of a torsional spring or strip of metal as the lever fulcrum, in place of the trunnions or pivots which were before in use. The first, second, and fourth claims of the patent made a "circuit-breaking lever" an *ingredient* in the combination. The third claim was as follows: "The combination in a telegraph key, of the

lever, fulcrumed upon the torsional spring, with the adjusting screws for regulating the amplitude of the lever movement and retractile resistance of the torsion spring, substantially as described." The defendants used a similar device in combination with a "sounder," without, however, any "circuit-breaking lever," and contended that said third claim was limited to a "key," and, by implication, to a "circuit-breaking lever." It appeared that said Edwards spring was equally applicable to a "sounder," without departing from the spirit or letter of the invention. *Held,* that said third claim was broader than the other claims in omitting the "circuit-breaking lever," and was fairly to be construed to include a "sounder" in its meaning, without restriction to a key alone.

2. SAME—INVENTION.

The combination of torsional springs with keys or sounders, as described in said Edwards patent, is an invention which would not have occurred to a skilled artisan only. There was nothing in the prior art to suggest it except to an inventor.

3. SAME—UTILITY—INFRINGER.

A patent will not be declared void for want of utility, at the instance of one who is deriving benefit by infringing upon its claims.

In Equity.

*Arthur v. Briesen,* for complainant.
*George P. Barton,* for defendants.

COXE, J. This is an equity action for infringement of letters patent No. 270,767, granted to Edgar A. Edwards, January 16, 1883, and by him assigned to the complainant. The invention relates to instruments used for transmitting telegraphic signals, and is said to be an improvement upon the well-known Morse key; the inventor substituting, as the lever fulcrum, a torsional spring or strip of metal for the trunnions or pivots which were before in use. The patent contains four claims. In the first, second, and fourth, "the circuit-breaking lever" is distinctly made an ingredient of the combination. The third claim is in these words:

"(3) The combination, in a telegraph key, of the lever, fulcrumed upon the torsional spring, with the adjusting screws, H, H', for regulating the amplitude of the lever movement and retractile resistance of the torsion spring, substantially as described."

It will be observed that this claim omits "the circuit-breaking lever" as an element, and in this respect is broader than the other three. The infringing instrument is called a "sounder," and contains no "circuit-breaking lever," as this term is generally understood in the art. The complainant, however, insists that the sounder has a lever which breaks, not an electric, but a magnetic, circuit, and is therefore within all the claims of the patent. What the patentee invented, and unquestionably intended to secure, was a flat torsional spring, ribbed or otherwise, upon which a lever is fulcrumed, when, in any electrical instrument, it can be substituted for the pre-existing trunnions and spiral spring, and perform the twofold function of a supporting fulcrum and retractive spring. He distinctly says that he does not limit himself to the application of the spring to the key alone, as it is obvious that it may be used to replace the trunnions of the relay and sounder. He may, however, have so restricted three of his claims that they do not cover the instrument used

by the defendants. It is not essential, in the present action, to decide this question. If it is held that the third claim is infringed, the complainant will derive the same advantage as if the decree declared the infringement of all.

The defendants insist that the patent is void for want of utility and invention, and that they do not infringe. But a word need be said regarding the first defense. Several instruments embodying the invention have gone into practical operation, and have apparently been received with favor by telegraphists. In fact, it appears that an employe of the defendants, Charles D. Haskins, has, since the commencement of this suit, secured a patent, dated November 9, 1886, for an improvement in telegraph receiving instruments; one element of the combination being a torsional spring substantially identical with the patented spring, the only difference being in the manner in which it is fastened to the lever. This patent was assigned to the defendants. It can hardly be said, then, that Edwards' invention is without utility. That which is used is useful. A thing to be useless can have no utility whatever. A patent is never declared invalid upon this ground, at the instance of one who is deriving benefit by infringing upon its claims. *Gibbs* v. *Hoefner*, 22 Blatchf. 36, 19 Fed. Rep. 323, and cases cited.

Is the patent void for lack of invention? The defendants, for the purpose of illustrating the art at the date of the invention, have introduced in evidence a number of exhibits showing the manner in which telegraph keys were constructed prior thereto. It is unnecessary to refer to these, as they do not contain the torsional spring, and add very little to the light thrown upon the prior art by the statements of the patent itself. The exhibits which are the nearest approach to the invention are the magnetic "pole changer" and the "adjustable torsional spring." In the "pole changer," first known in 1881, there is a lever which oscillates between fixed points, and is fulcrumed upon the free end of a non-adjustable torsional spring. The principal office of this spring is to form a supporting fulcrum for the armature lever. The retractile force exerted by it is very slight. If one of the supporting posts in the patented apparatus were removed, its similarity to the "pole changer" would be more apparent. The "adjustable torsional spring" exhibit is an enlarged model of an instrument made by one of the witnesses in 1878. It consists of a fine wire, connected at each end to adjustable brackets, a lever being suspended in the center of the wire. It is not the purpose of the wire to cause repeated and regular oscillations of the ends of the lever. That it performs any torsional function is strenuously disputed. The wire is very fine; and as its ends are not firmly fastened, but to some extent are permitted to rotate in the holes of the brackets, it is not easy to see how it can be twisted to exert any appreciable force. It is enough to say that the matter is involved in doubt. Neither of these exhibits can be said to anticipate or otherwise to defeat the patent. It follows, therefore, that the patentee has made an invention; not a great one, certainly, but one entitling him to a position far above the plane of the skilled mechanic. Torsional springs were, of course, well known; so were tele-

graph keys and sounders, minus this spring,—but the combination of the patent was never before used, and there is nothing in the prior art to suggest it, except to an inventor. To one who was a skilled artisan only it would never have occurred.

Do the defendants infringe? They argue in the negative, for the reason that the combination of the third claim is confined to a telegraph key, and, by implication, to a "circuit-breaking lever;" and as they use the combination in a telegraph sounder, and not in a key, they do not infringe. They insist, further, that they do not employ the adjusting screws, H, H'. In regard to the latter suggestion the defendants' expert testifies:

"I find two adjusting screws having a relation to the lever of the sounder, similar to that of the screws, H, H', to the lever of the key in the patent; but in the sounder they do not practically have any effect upon the retractile force applied in the lever."

The complainant's expert considers the functions the same in every particular. The court is satisfied that he is correct.

As has been seen, the third claim does not contain the element of a "circuit-breaking lever;" and, in view of the clearly expressed intention of the patentee to include other telegraphic instruments, it must be held to include the lever of a sounder. Fairly construed, the claim should read, "the combination in a telegraph key *or sounder*," etc. To restrict it to a "key" alone, as that word is known in telegraphy, would be most illiberal, and would unduly circumscribe the invention. No better illustration of this can be found than the following statement from the Haskins patent, before alluded to:

"The invention has been described in connection with a telegraphic sounder; but it is evident that the torsion spring may be applied to the armature lever of any telegraphic receiving instrument, or to the lever of any telegraphic key, without departing from the spirit of the invention."

Equally is it true that the Edwards spring may be applied to a sounder without departing from the spirit or the letter of the invention.

As the question of infringement was carefully examined by this court upon the motion for a preliminary injunction, (28 Fed. Rep. 85,) it is unnecessary to repeat what was then said.

There must be a decree in favor of the complainant, upon the third claim, for an injunction and an accounting.

As the motion to punish the defendants for contempt will probably turn upon a question of fact, which ought not to be determined upon affidavits, it is thought that this issue should also be referred to the master, and the motion held in abeyance until the coming in of his report.