LAMB KNIT GOODS CO. v. LAMB GLOVE & MITTEN CO. et al.

SAME v. MICHIGAN KNITTING CO. et al.

(Circuit Court of Appeals, Sixth Circuit.    December 2, 1902.)

Nos. 1,102, 1,103.

1. PATENTS—CONSTRUCTION OF CLAIMS—LIMITATION BY SPECIFICATION.

Where the identity or specific character of a patented article of manufacture is affected by the means of its manufacture, an exception must be made to the general rule that the means or process of manufacture is immaterial, and the claims may be construed with reference to the specification and drawings describing such means, and limited to the article so produced, although not so limited in terms. So in a patent for gloves formed from blanks, which, as described and illustrated in the specification and drawings, were knitted, and in fact, as so described and illustrated, could not be made otherwise, claims which contain no limitation in terms as to the means of manufacture, to save them from the objection that they are too broad, may properly be construed as limited by the specification to knitted gloves; and especially is such construction permissible where it appears to have been the one accepted and acted on by the patent office.

2. SAME—VALIDITY—ARTICLE OF MANUFACTURE.

The validity of a patent for an article of manufacture is not affected by the fact that such article can be produced on machines previously in use, and adapted to produce various articles, where it was not previously made, and the instruction of the patent was necessary to enable a workman to construct it on the machine.

3. SAME—INVENTION.

The fact that an article is not more useful than other similar articles does not affect its patentability, but, if it is useful and new, and invention is involved in its production, it is a proper subject for a patent.

4. SAME—CONTRIBUTORY INFRINGEMENT.

A patentee, who, after disposing of his patent, joins in forming a new company, which manufactures an infringing article, but which he claims to be a new and independent invention of his own, is liable as a contributory infringer.

5. SAME—INFRINGEMENT—KNITTED GLOVES.

The Lamb patent, No. 462,563, for a glove constructed from two knitted blanks, one for the thumb and the other for the rest of the hand, including the fingers, construed, and *held* not anticipated, and to disclose invention. Also *held* infringed.

6. APPEAL—STIPULATION AS TO RECORD—DUTY OF CLERK TO RECOGNIZE.

Stipulations by counsel as to the parts of the record to be embodied in the transcript on appeal, entered into for the purpose of eliminating unnecessary matter, are to be encouraged, and it is the duty of the clerk to recognize such stipulations, and to make the transcript in conformity

---

¶ 2. See Patents, vol. 38, Cent. Dig. § 55.

¶ 4. Contributory infringement of patents, see note to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485.

therewith. Where he refuses to do so, costs will be taxed only for that part of the record embraced in the stipulation.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Michigan.

Appeal from the Circuit Court of the United States for the Northern Division of the Eastern District of Michigan.

Fred L. Chappell, for appellant.

Edward Cahill and Clark C. Wood, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. These two cases were argued and submitted together. In each the appellant complained of the infringement of patent No. 462,563, belonging to it by assignment from Isaac W. Lamb, the patentee, who is also one of the defendants and appellees in the first of the cases above entitled. The patent is for a glove, and bears date November 3, 1891. The defendant in each case, other than the corporations named, are officers thereof; Lamb being the president of the one named as defendant in the first-entitled cause. In each case the defendants, except Lamb, by their answers disputed the validity of the patent, and all denied infringement. The causes were heard upon pleadings and proofs, and the bills in both cases were dismissed upon the ground that the patent was void for lack of invention, except with respect to the defendant Lamb, and as to him because it was not shown that he infringed.

The patent was issued to Lamb for a glove constructed from two blanks, one for the thumb and the other for the rest of the hand, including finger pieces. The specification describes these blanks as being fabrics knitted upon a machine, and then joined and put into form by sewing or crocheting. The method of making the blanks upon the machine is specified with such minuteness that a skilled operator could make them without further direction, and displays a good deal of ingenuity. The claims of the patent are as follows:

"(1) A glove formed of two blanks, the hand blank having finger pieces formed thereon, and narrowed at the point where the thumb is attached, and of a uniform width from the thumb to the wrist, and the thumb blank having its upper portion knit goring, substantially as described. (2) A glove composed of a main blank having finger pieces narrowed at the bases, said blank being narrowed at the point where the thumb is attached, and having its upper portion of uniform width, and a thumb blank secured to the main blank at the point of narrowing, substantially as described. (3) A glove comprising a main blank having the fingers thereof composed of seven pieces, six of which are narrowed at the bases, and a thumb blank suitably secured to the main blank, substantially as described."

The drawings are shown below in another connection.

A question of some difficulty meets us at the outset, which is not noticed in the briefs, nor was it commented upon in the argument. It will be noticed that the specification describes a glove made up of knitted blanks. The claims are for a glove made up of blanks constructed in the forms described, but there is nothing in them which expressly requires that they shall be knitted blanks, except that in the first claim there is a requirement that the thumb blank shall be knitted; and the question is: Are the claims to be construed as lim-

ited to a glove formed from knitted blanks, or as extending broadly to a glove made up of blanks of any suitable fabric (say of leather or cloths). It is probable from the proceedings in the patent office that the claims were regarded as limited to the kind of fabric described in the specification, for it appears from the contents of the office files, which were put in evidence, that what is now claim 1 described the thumb piece as having its "upper portion cut goring," and for that reason was objected to, upon a suggestion that it should be stated that the upper portion was knit goring. And it appears that upon an amendment accepting this suggestion the claim was allowed in its present form. It is the settled rule in patent law that claims must stand or fall as made (Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344); but it is equally well settled that the claims of a patent are to be construed by reference to the specifications (of which the drawings form a part), and that such reference may be had, not for the purpose of expanding the claim, but for the purpose of defining it and limiting it to the description of the invention (McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Howe Mach. v. National Needle Co., 134 U. S. 388, 10 Sup. Ct. 570, 33 L. Ed. 963; Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, 39 L. Ed. 263; Tilghman v. Proctor, 102 U. S. 729, 730, 26 L. Ed. 279). And within certain limits the courts are inclined to adopt this mode of construction when it is necessary, as in the present case, to save the patent from the objection that the claims are too broad. Rubber Co. v. Goodyear, 9 Wall. 788, 795, 19 L. Ed. 566; McClain v. Ortmayer, supra; Coupe v. Royer, supra, 577; Soehner v. Stove Co., 28 C. C. A. 317, 84 Fed. 182. And this would seem to be all the more safe and permissible where the construction adopted plainly appears to have been the one accepted by the patent office. Of course, this cannot be done when the claim specifically calls for matter not described at all, but only where there is a description to which the claim, when correspondingly restricted, may apply. If the patent, when construed upon what stands "within its four corners," claims more than the actual invention, the patentee must disclaim the excess in order to save that to which he is really entitled. We do not think it necessary to enter into the beclouded question as to how far the words "substantially as described," which are added to each of these claims, may affect the construction which we ought to adopt. The question we are considering is one of serious importance here; for, in general, when the patent is for a product of manufacture, it is not material by what means or by what process it is manufactured. But it is obvious that there must be an exception to this rule to cover cases where the identity or specific character of the thing patented is affected by the means or method of its manufacture. Thus it is easy to understand that a glove made up of knitted material is a different thing from one made from cloth or leather. Its qualities are dependent on the way in which it is made. If the method of manufacture is indifferent, then, of course, the general rule applies. We think the patent should be construed as one for a glove composed of knitted blanks, such as are described in the specification.

Figs. 1, 2, and 3, shown by the drawings, sufficiently indicate the blanks and the glove.

The thumb piece is set into the other blank, the part "knit goring" extending toward the wrist. The loose threads of the blanks are left to be used in completing the ends of the pieces to which they are attached. The finger pieces are knit separately, and are wider; that is, their aggregate width is wider than the main part of the blank which covers the hand. Each finger piece is knitted entire down to hand, where the knitting is stopped on one part of the length, as shown at 19. Thereupon, the knitting for the hand is taken up and continued until the place 11 is reached, where the thumb piece is to be inserted, and where a part of the knitting is discontinued to accommodate it, and then the rest of the hand blank is knit out as shown. The several flaps left on the edges of the finger pieces are knitted wide enough to extend around the finger to the other side of the finger piece, where the edges are secured together, thus making only one seam along the finger piece necessary. So the thumb piece is entire, and, when sewed in, the glove is completed. The court below found that this was not a new structure, it appearing, as the court held, that such gloves had previously been made by hand, and that all Lamb did was to knit the parts by a machine, rather than by hand. Undoubtedly, the conclusion that the patent was void was correct if the facts were as supposed; but we are unable to find in the record any evidence which satisfies us that there had been in prior public use a glove, such as the patent describes, knit by hand or otherwise.

A number of patents on knitting machines are shown by the record, containing directions for their use. They describe how a blank with thumb and finger pieces can be knit on them, but none describes the method of the patent in suit of knitting the blank for the hand and the finger pieces in a single structure. In fact, those patents with their specifications fall far short of anything furnishing instruction for making the glove of the Lamb patent, and none of them pretended to do so. All that can be said of them is that the machines were capable of knitting circular work, and flat work also, which could thereafter be sewed up by hand. The nearest approach made by any previous patent to that of the Lamb patent was that of a patent to Wakeman in 1881,—No. 241,458,—the main object of which was to show a knit mitten in which the fabric was widened on knitting up from the wrist into the thumb, but having the rows of stitches parallel; and also showing the rows of stitches to be continuous in the main fabric and in the thumb. But this was round work. Stitches were thrown off at the base of the thumb so as to provide a square end. A cut was made into one side of the mitten where the thumb was to be knitted on by pricking out the threads across enough of the rows so that with those dropped there should be enough left on which to continue the thumb. The patent being for a mitten, showed no finger pieces. It is obvious that it contained very little of the characteristics of the patent in suit. There is an English patent to Upsdale for knitted fabrics, but it is still more remote, and hardly furnishes a basis for comparison. Then there is the oral testimony of the witness Phelps, who is a son-in-law of the defendant Lamb, who swears that he himself at one time, pre-

vious to the date of this Lamb patent, produced a glove like that of the patent; but he does not produce a specimen, and a witness who, he says, had knowledge of it at the time, does not recollect the circumstance. And Lamb himself, in a rather dubious way, furnished what at most is a hint of a previous production of his own that might anticipate the structure of the patent. The circumstances and the testimony of the other witnesses bear heavily against this evidence, and it is not persuasive.

The defendants also contend that the patented glove is simply the product or result of the operation of the patented machine, and so is not of itself patentable. This might be so if it was the only thing that could be made on the machine; but the machine is adapted to knitting of various fabrics, and it would seem that the instruction of this invention is necessary to enable the workman to construct the glove on the machine. It is also urged that the patent shows "simply a good, average, well-fitting glove," and that these are the advantages claimed for it; but that it really fits no better and looks no better than other gloves. We cannot say how this is. No doubt, however, is expressed of its utility. The defendants are engaged in the business of manufacturing and selling something very similar to it, and this must be accepted as very cogent evidence for the purposes of the case. Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939; Gandy v. Belting Co., 143 U. S. 587, 595, 12 Sup. Ct. 598, 36 L. Ed. 272. It may be more or less useful than other gloves. That is unimportant. If it is a useful article, and is new, it is the proper subject of a patent, provided it involved invention to produce it. Gibbs v. Hoefner (C. C.) 19 Fed. 323; La Rue v. Electric Co. (C. C.) 31 Fed. 82; Seymour v. Osborne, 11 Wall. 516, 549, 20 L. Ed. 33. We think these conditions existed, and that the patent is valid.

Upon the question of infringement, the glove manufactured and sold by the defendant in No. 1,103 (the Michigan Knitting Company) is identical, or so nearly so that we are unable to distinguish it in any essential particular from the glove of the complainant. All three of the claims are infringed. The glove of the defendants in the other case shows substantially the same characteristics as those of the first and second claims of the patent, with some slight variations, which, however, furnish only a frail foundation for distinguishing them. It is conceded that the third claim is not infringed by these defendants. It looks to us as though the defendant Lamb had claimed to carry over into his new company more of what he had invented than was consistent with the rights of his former associates. This, perhaps, was not altogether unnatural, for this art was what he had made it. And we think also that he must be held responsible with his corporation for the infringement. He states in his answer that the gloves manufactured by the defendant corporation are made by a "new and improved" method invented by his skill expressly for that purpose. The answer of the corporation says the same thing. Both answers seem to found their denial of infringement upon their contention that their product is something different from that of the complainant. We can have no doubt, if there is infringement, that Lamb should be held to be a contributor to it. The

other individual defendants are not shown to have personally, and independently of their corporation, participated in the infringement, and the decrees of the court below must be affirmed as to them, with costs in both courts. As to the defendant corporations and Lamb, the decrees will be reversed, and the causes remanded for the usual accounting for profits and damages. As to these last-mentioned defendants—that is to say, the Michigan Knitting Company in the one case, and the Lamb Glove & Mitten Company and Lamb in the other—the complainants will recover costs in this court and in the court below.

Another matter remains to be considered. When these appeals were taken, counsel for the respective parties agreed upon the parts of the record which they would require to be embodied in the transcripts in the respective cases, being all such parts as they deemed essential for the purposes of revision in this court. Written stipulations containing this agreement were filed with the clerk of the circuit court, and he was requested to proceed accordingly. The clerk declined to recognize the stipulations, being of opinion, as we infer, that his duty required him to return the whole record, and that the stipulation of the counsel would not justify him in doing less, and he made complete transcripts in both cases. We are of opinion that the clerk erred in this. The proper course was for him to observe the agreement of counsel, and leave the parties to abide the consequences. His certificate to the transcript would, of course, be according to the fact, and state that the transcript was a copy of so much of the record as counsel had required him to include in the transcript. If it should be found by this court that the transcript did not contain all that was necessary to a proper determination of the case, and that justice required a further return, this court would make an order therefor, and in the end make the proper order in regard to costs. The endeavor of counsel to eliminate matter which has been found to be superfluous and unnecessary to a review in the appellate court is one to be encouraged. It mitigates the costs to the parties, and facilitates the labor of the court. The supreme court has on several occasions complained of the neglect of counsel to perform this duty, and our own experience has been such as to impress us with the justice of reproof in such cases. The duty which devolves upon counsel in this respect cannot be performed if the clerk who makes out the transcript refuses to be governed by their directions.

Entertaining these views, we must direct that in the taxation of costs only such costs in respect to the making of the transcript as are due for so much as was included in the stipulations shall be considered or taxed.