## SANDERS v. HANCOCK.

(Circuit Court of Appeals, Sixth Circuit. February 2, 1904.)

No. 1,238.

1. PATENTS—INVENTION AND INFRINGEMENT—DISC PLOWS.

The Hardy patent, No. 556,972, for improvements in rotary disc plows, claim 2, as to its principal feature, which consists in setting the cutting disc not only at an angle with the line of draft, but also at an inclination backward from the vertical, was anticipated by prior patents for disc harrows; but the combination of the claim as a whole, including as elements the disc and staggered furrow and caster wheels, so placed and adjusted as to hold the disc in position horizontally and to resist the landward pressure, and which, while old, singly, by their co-operative action produce a new and improved result, is novel, and shows patentable invention. Such claim also *held* infringed.

2. SAME—INVENTION—COMBINATION.

It is not necessary to a valid combination that all the parts should co-operate all the time, but it is enough that in the normal and progressive use of the machine they do so some of the time.

3. SAME—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.

An element of a combination, although not definitely described in the claims, except by reference to the specification by the words "substantially as described" at the end of each claim, may be read into the claims, where it is fully described in the specification, and is essential to the operation of the machine.

4. SAME—INFRINGEMENT—DISC PLOWS.

The Hancock patent, No. 692,655, for means for converting a single disc plow into a plurality disc plow, and the converse, and incidentally of means for interadjustment of the disc-carrying beams and other appurtenances, construed, and *held* not anticipated, valid, and infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

This appellee, Hancock, brought this suit in equity, complaining of the infringement by the appellant, Sanders, of three several patents, one of them being patent No. 556,972, dated March 24, 1896, issued to Keating as assignee of Hardy, and subsequently assigned by Keating to the complainant; another being patent No. 643,499, dated February 13, 1900, issued to the complainant; and the third, being patent No. 692,655, dated February 4, 1902, also issued to the complainant; and praying for an injunction and for profits and damages resulting from the alleged infringement. All of the patents above mentioned were for inventions of "improvements in rotary disc plows." The defendant answered the bill, denying that the several persons who were alleged to have invented the improvements for which the respective patents were granted were in fact the original inventors thereof, and he also denied infringement of any of said patents. The judge of the Circuit Court awarded a preliminary injunction pendente lite. The complainant filed a replication. Proofs were taken, and, the cause having been brought on for hearing, the court dismissed the bill as to patent No. 643,499, but decreed for the complainant in respect to the second claim of patent No. 556,972, and all of the claims, of which there were seven, of patent No. 692,655, awarding a perpetual injunction, and the recovery of profits and damages, for the ascertainment of which a reference to the master was ordered. Thereupon the defendant appealed.

The following opinions were filed in the Circuit Court by CLARK, District Judge, the first on motion for preliminary injunction, May 2, 1902:

"In disposing of the question now before the court it is not permissible or desirable that any extended discussion of the issues presented should be en-

¶ 2. See Patents, vol. 38, Cent. Dig. § 29.

tered upon. On the contrary, it has often been ruled that the court, from the very nature of the proceedings, should examine the case only far enough to ascertain whether the plaintiff has an apparent title to protection, and the court is not expected to enter into inquiry concerning difficult questions of law, or the weight and value of conflicting evidence. 3 Robinson on Patents, §§ 1173–1210; Wise v. Grand Avenue Ry. Co. (C. C.) 33 Fed. 277, and cases there cited.

"It may be useful to restate here certain general principles which apply on the hearing for a preliminary injunction, and some of which apply as well on final adjudication. It is well settled that a mere conception or idea of a desirable function or result, resting in the mind, which might be obtained by a machine or device, is not invention, either for the purpose of obtaining a monopoly, or for the purpose of making the defense of prior invention. Invention, in the legal sense, must involve a practical, successful, operative device. Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 22 L. Ed. 410; 1 Robinson on Patents, § 335; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; 2 Greenleaf on Evidence [16th Ed.] § 495, and cases cited. It must be a perfected invention, and either put to practical use, or be clearly capable of such use, and the novelty of an invention is not negatived by a prior useless process or thing. Walker on Patents [3d Ed.] § 65. Nor is anticipation made out by a device which might, by slight modification, be made to perform the same function, if the prior invention were not designed by its maker nor adapted to actual use for the performance of such function. Topliff v. Topliff et al., 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Krementz v. The S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558; Clough v. Barker, 106 U. S. 166, 1 Sup. Ct. 188, 27 L. Ed. 134. And of course the prior invention, when relied upon as anticipating, must be a complete, operative instrument, and the burden to show this is on defendant. 2 Greenleaf on Evidence [16th Ed.] §§ 501–503, and notes. Another well-settled proposition is that even in a combination patent infringement is well established whenever the alleged infringing device accomplishes the same result, and substantially in the same way. Cantrell et al. v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017; Rowell et al. v. Lindsay et al., 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906; Machine Company v. Murphy, 97 U. S. 120, 24 L. Ed. 935. And mere colorable and immaterial difference in the mechanical arrangement and adjustment, or difference in the form of parts of the structure, or methods of fastening or bolting such forms together, does not avoid infringement, as omitting an element, so long as the same result is obtained, and substantially in the same way. Morey v. Lockwood, 8 Wall. 230, 19 L. Ed. 339; Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; Walker on Patents, §§ 350–353, 363–368, and illustrative cases. Nor for similar reasons will an immaterial addition avoid infringement. Walker on Patents, § 347. And no rearrangement or transposition of the parts or substitution of one thing for another avoid infringement, so long as the fact remains that the same result is worked out in practically the same way. Walker on Patents, §§ 348, 350.

"Attention may, I think, be called to the now well-established doctrine of the recent cases in regard to combination patents, which put those inventions on a different footing from what the tendency of the reasoning of the older cases put them. The older cases are well calculated to create the impression that a combination patent must in all cases receive a narrow construction, and that such an invention is hardly entitled to the benefit of the doctrine of equivalents. It has been demonstrated, and particularly in recent years, that patents which satisfy in the highest degree the requirements of the public, and a growing and complex business establishment such as ours, are not limited to the class called the primary or pioneer patents, but include combination patents. Indeed, the practical utility, and the change from failure to success, is shown in the highest degree in combination patents, and in view of this a more liberal attitude is now shown towards such patents. In the case of Brammer v. Schroeder, 106 Fed. 918, 920–921, 46 C. C. A. 41, the result of the more modern cases is restated by Judge Sanborn in the following language: 'One who invents and secures a patent for a machine or combination which first performs a useful function is thereby protected against all ma-

chines and combinations which perform the same function by equivalent mechanical devices. * * * In other words, the term mechanical equivalent, when applied to the interpretation of a pioneer patent, has a broad and generous signification. This general rule of law, like every other principle of jurisprudence, applies equally to all patents, whether for combinations, machines, or combinations of matter. If, however, one invents and secures a patent for a new combination of old mechanical elements, which first performs a useful function, he is protected against all machines and combinations which perform the same function by equivalent mechanical devices, to the same extent and in the same way as one who invents and patents a machine or composition of matter of like primary character. The doctrine of mechanical equivalents is governed by the same rules, and has the same application, when the infringement of a patent for a combination is in question as when the issue is over the infringement of a patent for any other invention. Imhaeuser v. Buerk, 101 U. S. 647, 653, 25 L. Ed. 945; Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435, 437, 27 U. S. App. 122, 150; Thomson v. Bank, 53 Fed. 250, 253, 3 C. C. A. 518, 521, 10 U. S. App. 500, 509; Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Rees v. Gould, 15 Wall. 187, 189, 21 L. Ed. 39; Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 27 L. Ed. 979; Watermeter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024; Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; National Cash Register Co. v. American Cash Register Co., 53 Fed. 367, 373, 3 C. C. A. 559, 565, 3 U. S. App. 340, 357; Belding Mfg. Co. v. Challenge Corn Planter Co., 152 U. S. 100, 14 Sup. Ct. 492, 38 L. Ed. 370.'

"And in the case of Keystone Manufacturing Company v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, Mr. Justice Shiras, speaking for the court, said: 'Where the patented invention consists of an improvement of machines previously existing, it is not always easy to point out what it is that distinguishes a new and successsful machine from an old and ineffectual one. But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the Patent Office has granted a patent to the successful inventor, the courts should not be ready to adopt a narrow or. astute construction fatal to the grant.' And so in the case of Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136, Mr. Justice Brown, speaking for the court, said: 'The fact that this invention was first in the line of those which resulted in placing it within the power of an engineer, running a long train, to stop in about half the time and half the distance within which any similar train had stopped, is certainly deserving of recognition, and entitles the patent to a liberality of construction which would not be accorded to an ordinary improvement upon prior devices.' And in another of these Westinghouse cases, namely, Westinghouse Air-Brake Co. v. New York Air-Brake Co., 63 Fed. 962, 11 C. C. A. 528, Judge Shipman, giving the opinion of the Circuit Court of Appeals for the Second Circuit, said: 'It is not important now to determine the grade of its pioneership, and whether it may be classed in the list of those inventions which are of the highest rank; but it was an invention created to achieve great necessities and overcome great hindrances, and was one of wide breadth. A court would not be justified in adopting a "narrow or astute construction" which would minimize the character of the invention, leave its real scope open to trespassers, and thus be "fatal to the grant."'

"I have set out the foregoing as a brief statement of the legal view under which the case is to be considered. It is well understood by the eminent counsel who are giving the case attention on both sides that I am not expected, on this hearing, to consider the case with a view of disposing finally of any serious issue of law or fact. It is manifest that I should not do so, as the affidavits of witnesses, as now presented, constitute an ex parte statement of the witnesses only, without the advantage of cross-examination, and certainly without the advantage of fullness in any respect.

"Now, in regard to the various patents relied on by the defendant as anticipating those of the plaintiff, it would become necessary for the defendant to show that these were practical, successful inventions, as a mere patent on

paper, accompanied with drawings or models, never reduced to practice, does not constitute anticipation. The patent must have been put into practical use, or must clearly have been such a patent as that it could have been put into practical use, and nothing short of this constitutes anticipation. And in order that the defendant might make good, if he can, the defense of prior invention, it would be necessary, in almost any case, to go fully into the evidence on that subject, which has not been done, and could not be done on this hearing.

"It is quite obvious, without stating more, that the court can act only on prima facie impressions of the case on this hearing, although in the main those impressions should be clear and satisfactory, in view of the fact that the case is necessarily imperfectly developed at this time. And because the court does not and cannot decide any of these issues finally, it would not be well for the court to discuss the facts found in this record, as these facts appear on an ex parte or prima facie showing, 'and I thereby purposely avoid doing so.

"It is sufficient now to say that I think this case has been brought fully within the doctrine of the case of Blount v. Société Anonyme Du Filtre Chamberland & Système Pasteur et al., 53 Fed. 98, 3 C. C. A. 455, and this case has been often cited, approved, and followed by the Circuit Court of Appeals for this circuit in subsequent decisions, and must be regarded as controlling authority for this court.

"After a study of the affidavits of the expert, and after making a comparison of the two models by inspection, I conclude, on the record as it now is, that, with the exception of the seventh claim in the first of the Hancock patents, the claims actually in question, and about which serious issue was made on the hearing, are valid, and that they are infringed by the machine made and sold by the defendant.

"It strikes me that such changes as appear to exist between the defendant's machine and that of the plaintiff are immaterial, changes simply in form and in the method of adjusting the parts, and still more by the simple rearrangement and transposition of some of the structural parts of the machine, and the substitution in one or two instances of parts which are exactly the functional equivalent of the parts for which they are substituted.

"The circumstances which appear in the record, as it is now made up, that the plaintiff has devoted years of earnest study, and has expended large sums of money, in efforts to design and complete his invention, while the defendant has devoted no such time, and incurred no such expense, is a circumstance which is significant in the examination of these questions. It is established, as the record now is, and not controverted, that such study as the defendant has given has been with a view to so modify the plaintiff's machine as to avoid infringing it, and he does not, as the case now is, appear at any time to have entered upon any original inquiry, with a view to the exercise of his inventive genius, if he possesses any such genius. This is clearly proven by the expert mechanic of the Chattanooga Plow Works, and is not controverted by the defendant.

"And I will make but one more reference to the facts, and that is that the expert mechanics of some of the very largest manufacturing establishments in the country prove that they have carefully studied the plaintiff's invention, with a view to the very question of infringement, and that after such study it was concluded that the patent was valid, and accordingly contracts were made with the plaintiff, by which a license was obtained to make the machine in accordance with his patents and claims. This is public acquiescence in the very highest and best sense of the term, as used in the adjudged cases. Indeed, in this feature it cannot be controverted that the case is unusually strong.

"I have now said all that I feel should be said on this prima facie showing, and until the case shall have been seriously entered upon, and the issues made determined by careful examination of the prior state of the art, with the aid furnished by experts, subjected to the valuable test of cross-examination. It is settled beyond question that in determining whether a preliminary injunction shall issue I consider merely whether there is a strongly probable prima facie case made, and then I compare the inconvenience and injury which may result to one side by granting the injunction with such inconvenience and injury as may result to the plaintiff in a denial of such injunction. The court

is always, on an issue like this, discharging a delicate duty, and it is unpleasant in any case to award an injunction which does or may seriously interfere with any person's business, and it is quite unpleasant to feel the necessity of doing so in this case; but my views on this showing are such that I am left no choice but to allow the injunction, except as to the seventh claim.

"This injunction will become effective and operative from and after May 5, 1902, at which time it is conceded the present season of demand for these plows will be over. From the order allowing this injunction an appeal lies at once to the Circuit Court of Appeals, without waiting for further hearing, and the case in that court is given precedence over other cases, and it is easy to have the case reviewed and the questions adjudged by the Circuit Court of Appeals before the date when another season of demand for these plows opens, and this appeal does not interfere with the speedy preparation of the case for final hearing on its merits. The plaintiff is expected at once to enter, with all reasonable speed, upon the preparation of the case, and if the plaintiff shall fail to do this it is open to the defendant to make application to the court for such order as will be sufficient to meet any apparent disposition to delay, which is, of course, not to be expected.

"The plaintiff will execute before the clerk of this court, with satisfactory surety, bond in the sum of $10,000, conditioned to indemnify and save the defendant against any damage which may result from the issuance of this injunction, in the event the plaintiff fails in the law suit. If a bond in this sum is not adequate, or if in consequence of future events it would become inadequate to fully protect the defendant, application can then be made to the court for a further order to increase the bond.

"The defendant is allowed to proceed under the conditions heretofore prescribed in the restraining order until May 5, 1902, at which date the injunction now granted will become effective, and restrain the defendant from further making or selling the machine complained of as an infringement in the bill. On May 5, 1902, the injunction will become fully effective."

### Supplemental Opinion.

#### (May 4, 1902.)

"A memorandum opinion indicating my views in this case, very shortly stated, was forwarded to the clerk yesterday. To-day I am furnished, through courtesy, with the advance sheet opinion of the Circuit Court of Appeals for this circuit in the cases of the Dowagiac Manufacturing Co. v. The Superior Drill Co. and P. P. Mast & Co. v. The Superior Drill Co. (which were submitted on February 11, 1902, and decided April 8, 1902) 115 Fed. 886, 53 C. C. A. 36.

"In view of the fact that the opinions of the Circuit Court of Appeals are controlling and absolute authority for this court, and also because the case is an exceedingly well-considered one, and a most instructive one, I deem it proper that I should call attention of counsel on both sides to this opinion as a most important citation to make, in addition to those already made. In the memorandum opinion already filed I quoted liberally from the opinion of Judge Sanborn in the case of National Hollow Brake Beam Co. et al. v. Interchangeable Brake Beam Co., 106 Fed. 693, 45 C. C. A. 544, to show that in a combination patent the doctrine of mechanical equivalents is governed by the same rule as when the infringement complained of is in relation to a patent for any other invention within certain limits, indicated in the opinion of Judge Sanborn, and now again in the opinion just cited. It will be seen that the Circuit Court of Appeals expressly approves the opinion of Judge Sanborn in the case just cited. It will also be noticed, of course, that the patent involved in the opinion of Judge Severens related to that class of drain drills known as 'disc drills,' and the case in all its bearings is a close analogy, I think, to the one at bar."

### Opinion on Final Hearing.

#### (April 11, 1903.)

"This case is now before the court on final hearing, having also been before the court on two former occasions, when the same questions were elaborately discussed by eminent counsel, and given such study by the court as the importance of the issues demanded. In view of this situation, and of the fact that a written opinion was filed when the case was up for consideration on the

application for preliminary injunction, it is not necessary now that the same ground should be gone over again in this opinion, and it seems quite sufficient to state, in the briefest form possible, the result arrived at on a final study of the case, and counsel will understand the bearing of such brief observations as are necessary quite as well as from an elaborate opinion.

"Giving, then, the result, in condensed form, it seems sufficient to say that I conclude that claim 2 of the Hardy patent, No. 556,972, is valid, and the defendant does not controvert that the plow made by him is an infringement, if this claim 2 of the Hardy patent is to be regarded as valid. The only issue made on the claim of that patent is one of validity, and not of infringement. It is conceded that claim 4 of the Hancock patent of 1900 is not infringed, and this renders any ruling on the question of its validity immaterial, and, in view of the fact that the defendant changed his plow construction so as to avoid any objections under claims 5 and 6, I do not regard those claims as now in issue or calling for judgment. In reference to claim 7, I have been unable to change my opinion as formed when the case was under consideration on the application for injunction. There is much force, indeed, in the contention that as this claim covers a particular construction, being a specifically manufactured model, that it is patentable. Viewed in this light, the question must be regarded as close; but I conclude again, upon this final study of the case, that claim 7 is not valid. I also reach the conclusion, as on the former hearing, that the claims of the Hancock patent of 1902, No. 692,655, are valid, and that they are infringed by the defendant's construction. As before stated, I do not deem it necessary to go over the ground again in relation to this particular patent. It results from these views, upon the whole case, that the injunction is allowed as to claim 2 of the Hardy patent, and denied as to all the claims in issue in relation to the Hancock patent of 1900. An injunction is also allowed on the claims of the Hancock patent of 1902. Of course, if it is desired, the usual account for profits and damages will be allowed, and the costs will, agreeably to the general rule, be taxed against the defendant."

Robert Pritchard and J. B. Sizer, for appellant.

Brown & Spurlock and Williams & Lancaster, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge, delivered the opinion of the court.

The principal controversy between the parties in this case relates to the validity of the two patents which were sustained by the Circuit Court. The defendant in that court contended there, as he does here, in respect to these patents, that at the time of the alleged inventions the progress of the art of manufacturing rotary disc plows had advanced so far in the direction of said inventions that no more than the skill of those conversant with the business was required to devise the alleged improvements.

Rotary disc plows, although they have been the subject of invention for 25 years or longer, have only quite recently come into extensive use. They have come in the wake of disc harrows as cultivators of the soil. A number of patents showing different forms of construction had been taken out prior to the date of the inventions of complainant's patents, and it will be convenient to state in a comprehensive way the condition of the art at that time. These plows, as they had been usually constructed, consisted of a frame, generally carried on wheels, in which was located a large concave disc, one or more, of iron or steel, having an edge on its periphery, and revolving on an axle at its center. The vertical plane of the edge of the disc was, in the usual form, perpendicular to the frame and to the soil, but the horizontal plane was turned at an angle to the line of draft, so that when the disc was let down and the machine was moved forward the disc would

enter the soil at the same angle to the line of movement, and, revolving, would turn out on its concave side a furrow of the earth scraped out by the edge of the disc, the area of earth moved corresponding with the angle at which the disc was set and the depth to which it entered the soil. Provision was made for raising and lowering the disc in the frame or with the frame, and for counteracting the sidewise pressure produced by the movement of the earth on the concave side of the disc, as by the use of sharp-edged wheels entering the soil and running parallel to the line of draft, or by staggered wheels inclining inwardly at the bottom. When more than one of such discs were used they were sometimes set one a little forward of another, and on parallel lines, so as to operate on strips of the soil after the fashion of what are known as gang plows.

It is contended for the complainant, and we think it is a just conclusion from the evidence, that certain objections had been found in such former constructions of these plows which tended to defeat their usefulness and prevented their coming into general use, notably these two: The disc, running in the ground with a perpendicular plane, simply scraped out the soil instead of plowing it, and left the soil in the bottom of the furrow compacted by the scraping; and, secondly, that in order to compel the disc to properly enter the soil it was necessary to carry a considerable weight upon it, which was dead weight, and much increased the motive power required to operate the machine. Some of the most recent patents showed columns of extra weights located above the discs to effect the purpose. The principal object of Hardy's invention, which is the subject of patent No. 556,972, is found in his conception of means for overcoming the defects above stated, though he also stated a purpose "to so arrange the landside wheel relatively to the plowing disc that it shall form a pivoted support by which the plow may be turned easily at the corner or end of the furrow."

His main purpose he accomplished by removing the dead weight hitherto found necessary to drive the disc into the ground, and turning the upper edge of the disc to a backward inclination, so that in operation it would stand not only at a horizontal angle to the line of draft, but also at an angle to the perpendicular plane of its former position. The results of this change were important. The cutting edge of the disc in its lower forward section would enter the ground at an angle more acute, the tendency of which would be to give the disc a dip or "lead" under the soil instead of rolling over it. This dispensed with the weight theretofore put into or upon the machine to impel the disc into the soil. The soil when cut up from below would slide upward and off the concave of the disc in much the same manner as it slides on the moldboard of the common plow, instead of being scraped and crowded off. Both of these features—the lightening of the load and the relief of the obstruction to the movement of the earth in front of the disc—would, of course, diminish the motive power required for the operation. Moreover, the compaction of the bottom of the furrow would be avoided, for the new angle of inclination which Hardy's invention contemplates could be so adjusted that the disc would not be riding upon the bottom of the furrow and dragging over it, but would be lifting off its furrow from the moment it is severed

by its cutting edge. It appears from the record that after the introduction of this improvement the use of these plows rapidly increased, and they were accorded public favor. This may to some extent have been due to other causes than the merit of the plows. Nevertheless we cannot but believe that the improvement we have mentioned was the principal reason, for it seems to us a probable result. Fig. 1 of the drawings of the Hardy patent shows the construction he describes, and with the description we have given of his invention, and the statement of claim 2, next following, sufficiently illustrates his improvement. It consists essentially in the location, or more particularly the position, of the disc which is turned to the left of the line of draft and backward at the top. The landside wheel is shown at 19. The caster-wheel, 8, the arm, 6, turning on the pivot, 4, and the stop, 5, about which more will be said hereafter, are also shown.

The second claim of the patent, which is the only one here involved, reads as follows:

"(2) In a rotary plow, the combination with a plow-beam, of a box-bearing arranged on the plow-beam, an axle rotable in the box-bearing, a plowing-disc secured to the said axle, rotated solely by the natural draft thereof and the friction of the soil, set diagonally to the line of draft and inclined out

of a vertical plane for cutting the furrow, and turning the soil therefrom, a furrow-wheel mounted on an axle at the same side of the plow-beam as the plowing-disc and arranged in advance thereof, an arm pivoted to the rear portion of the plow-beam and provided with a caster-wheel arranged in rear of the plowing-disc, and a stop device for limiting the swinging motion in one direction of the arm carrying the caster-wheel, said furrow-wheel and caster-wheel being inclined for resisting the side pressure of the plowing-disc, substantially as described."

In its physical aspects the change made in the position of the disc by Hardy does not seem large, but we are satisfied that it was an important one, and contributed much to the final success of these plows.

It is contended, however, that, considered in the light of previous inventions, it is not so new or recondite but that the insight of workmen skilled in this art should have perceived the advantages which would ensue from the change of construction, and would have made it. It is shown, however, that not only the skilled workmen, but those who were giving this art special study and exploring for improvements in rotary disc plows for several years, had not perceived this one, although the need of it was always pressing. This is no new suggestion, but it seems to have special relevancy when a series of improvements has culminated in one which contributes so decisively to the utility of a machine which others have been long trying to make operative. We have said that these advantages of this improvement in plows had not been perceived. Certain references are made by appellant which are supposed to show the contrary, to the most pertinent of which we shall next give attention.

A patent to Gardiner, issued in 1883, shows a rotary plow having these discs arranged in a gang suspended on arms secured to the frame. The discs were attached to the arms by rigid axles extending from the disc into a box or bearing upon a plate which was pivoted at the bottom to the arm, and had a slot at the upper end through which ran a bolt extending into the arm. By turning the plate on the pivot the upper bolt moved through the slot, and this gave a slight inclination to the disc out of its vertical position. But the drawings of the plate and of the slot seem to show that this inclination was from the top forward only, and, if so, it would not embody Hardy's idea. Another patent referred to is one to Cleveland, issued in 1891, which was for a rotary gang plow in which the discs were not entire, but were dish-shaped rings, with cutting edges; but they do not seem to have had a vertical inclination. At least there is nothing which more certainly indicates it than the quotation from the specification which counsel makes in his brief, as follows:

"Moreover, as the cutting edge of each steel annulus (or disc) is but little lower at the point where it is tangent with the soil than the corresponding point upon the inner edge, the annulus readily enters the earth. * * * The deeper it enters the greater is the force with which it rotates, enabling the edge to cut through turf or sod and raise the soil."

But this would seem to follow from the shape of the cutting rings, which are very concave. It must be admitted, however, that both these patents came near to the development of Hardy's improvement.

But a more serious trouble for the leading purpose of Hardy's invention is found in one or more previous patents for disc harrows. A patent to Niles, issued in 1882, for "improvements in revolving plows"

(so called, but, in fact, revolving harrows), shows the discs set not only at an angle to the line of draft, but also at an inclination backward from the vertical. He describes as his preferred form a disc having a flat working face. But he says, "if it is desired, the discs may be made somewhat dishing, in which case a better moldboard effect will be produced" than with ordinary discs. And he further says:

"Now, when the machine adjusted in this way is drawn forward, this double inclination of the discs will cause them not only to cut into the ground, as shown, but also to turn it over, instead of crowding or scraping it outward from the working face of the disc in the ordinary way—that is, the portion of the disc back of the point or cut will have a moldboard action on account of the inclination downward of its axis of rotation. This moldboard action, whereby the soil is turned in furrows, is obtained to a greater or less degree by changing the angle of inclination of the shaft to the line of progression, * * * as the shafts are inclined backward more and more, the discs cut deeper, and turn the soil over more completely."

It is difficult to distinguish this from Hardy's conception. It is true it is found in a slightly different kind of machine. But they belong to the same family—a very kindred art. We think, therefore, there was no patentable novelty in Hardy's principal idea, that of the peculiar position of his disc. If it had been new, there could be no doubt it would have made his combinations new and patentable.

We have no doubt that Hardy had no knowledge of any of these former patents, for they had not been much extended in use or public notice; but the consequence of their existence no less affects his claim of novelty than if he had known all about them, notwithstanding their obscurity. Evans v. Eaton, 3 Wheat. 454, 514, 4 L. Ed. 433; Frederick R. Stearns v. Russell, 85 Fed. 218, 29 C. C. A. 121; Sewall v. Jones, 91 U. S. 171, 23 L. Ed. 275; Crompton v. Knowles (C. C.) 7 Fed. 199.

This conclusion is in accord with the ruling of the Patent Office, where the claim for the disc, separately, was rejected. But the claim for the combination which included it was held valid and allowed. We think that this conclusion also was correct. We recognize the familiar doctrine that the mere bringing together of old elements found in older machines of the same or a kindred art to perform the same functions and effect the same mechanical result does not amount to patentable invention. But we do not think the conditions of the present case justify the application of that rule. That all the elements of this combination may be found in some form and in some relations in existing machinery must be admitted, and in a restricted sense they severally perform similar functions. But they also co-operate with each other in effecting the whole result, and do not each, unaided by the others, accomplish a step in the operation. Thus the disc performs its function as it did in the earlier machines, but it does not do so unaided. Its operation is affected by the staggered wheels, which not only contribute to carry it on an even, horizontal plane, holding it to its proper depth in the soil, but resist its pressure toward the unplowed land. And the staggered wheels, as between themselves, have a co-operative effect. The furrow wheel, without the aid of the caster wheel, would draw the forward end of the plow away from the land, and throw the rear in an opposite direction. The caster wheel,

without the aid of the furrow wheel, would turn the plow off to land, and by the proper location of each with reference to the disc a uniform direction of the plow is secured. The stop preventing the swinging arm of the caster wheel holds it in line in the forward movement of the plow, leaving the wheel free to swing in the opposite direction in turning the plow around. Like observations apply to other parts of the combination. It is not necessary to a valid combination that all the parts should co-operate all the time. It is enough that, in the normal and progressive use of the machine, they do so some of the time. Again, the patent describes that the staggered furrow wheel shall be located about the middle of the length of the frame, but in advance of the disc. This relative location of the wheel and disc near each other also facilitates their continued uniform co-operation when plowing around corners or when plowing crooked furrows.

. We have in several instances held valid combinations of old elements when from their different location in the new organization a different mechanical result was effected and a beneficial use subserved. Thus, in Star Brass Works v. General Electric Co., 111 Fed. 398, 49 C. C. A. 409, the new location given to the brush which takes off the current from a trolley wheel on street railway cars, which effected a more advantageous transmission of the current and afforded better protection to the brush, was patentable. In Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36, the changing of the location of a shield running by the side of a disc in a seed drill, which although it performed a similar service effected a different result in its combination with other parts, which was beneficial, entitled the author to a patent. And in Stilwell, Bierce & Smith Vaile Co. v. Eufaula Cotton Oil Co., 117 Fed. 410, 54 C. C. A. 584, we held the location of a conveyor of oil meal in a new and different place in the machinery which effected a better result than had been previously obtained gave valid claim to a patent. We are not referred to any prior rotary disc plow or other machine which embodied the same elements or similar elements organized in a similar manner to that of the Hardy plow. And, having regard to the presumption of validity arising from the grant, the success which it has attained, the nonexistence of any anticipation, and the adoption of it by the defendant in his business, with express notice of the patent, and with a view to profit by it, we think we should hold the combination of claim 2 to be valid. Lamb Knit Goods Co. v. Lamb Glove & Mitten Co., 120 Fed. 267, 272, 56 C. C. A. 547; Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939; Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558; Streator Cathedral Glass Co. v. Wire Glass Co., 97 Fed. 950, 38 C. C. A. 573. Infringement thereof if the claim is held valid is not seriously disputed, nor could it be successfully, for it is free from doubt. The defendant's plow is a copy of the complainant's in all essential particulars.

The invention covered by the Hancock patent, No. 692,655, had for its object the provision of means for converting a single disc plow into a plurality disc plow, or the converse, and, incidentally, of means for interadjustment of the disc-carrying beams and their appurtenances. Aside from the manner of arrangement, the novel things supplied were principally a "coupling element" designed to connect the primary beam

of the plow, and, through it, the whole organization of the working parts of the plow, to the tongue, and a "spacing number" or plate, with flanges at the side to insert between the several beams when more than one disc is used, which serves the purpose of holding the beams in relation to each other at the proper distance apart. Fig. 3 of the drawings shows the general organization of the plurality disc plow, 3 being the coupling element, and 9 a spacing plate.

Fig. 3.

Figures 4 and 5 show the coupling element, 3, and the spacing member, 9, more clearly.

The primary beam is attached to the coupling element on the flange, 4, of Fig. 4, and the coupling element is connected with the tongue by a bolt running through the central hole on the horizontal part, 3, and the rear end of the tongue as shown in Fig. 3. The disc carrying beams are shown in Fig. 3. There are seven claims, all of which are for combinations in disc plows embodying one or both of the special features above mentioned. The "spacing members" are not described in the claims except by reference to the specifications by the words "substantially as described" at the end of each claim. But as we have held (Soehner v. Favorite Stove & Range Co., 84 Fed. 182, 28 C. C. A 317; Stilwell-Bierce & Smith-Vaile Co. v. Eufaula Cotton Oil Co., 117 Fed. 410, 54 C. C. A. 584; Lamb Knit Goods Co. v. Lamb Glove & Mitten Co. [C. C. A.] 120 Fed. 267; Canda v. Michigan Malleable Iron Co. [C. C. A.] 124 Fed. 486), this carries into the claims the description of the specification. The defendant denies that there was any invention disclosed by this patent, because, he says, of earlier patents, which he alleges fully anticipated it. We think it sufficiently appears from the references made that "spacing members," of a kind so closely resembling those of Hancock as to deprive his form of construction of the merit of invention, had been disclosed in former patents or in prior public use. But in respect to the "coupling element," which he makes an element in all his claims, there is more doubt; and it is necessary to know more definitely what his coupling element is or may be, within the scope of his claims, and they, as we said of his "spacing members," must be construed, when they lack definiteness, by reference to his

specification.  It must be admitted, we think that by his coupling element must be understood a distinct member, and not all kinds of means for effecting a connection between the primary beam and the tongue.  So restricted, we do not find anything in the prior art which anticipates his device.  But it is contended that, assuming this to be so, the defendant does not infringe, because, as is said, Hancock's coupler is one having a pivotal or hinged connection with the tongue, and this Sanders does not use, but bolts his coupler rigidly upon the tongue.  But is Hancock restricted to a coupler having a pivotal connection with the tongue?  In his drawings he shows Fig. 4 above, two bolt holes in plate 3.  Only the one at the left hand will be used when he employs a pivotal connection, which he says he prefers.  The other bolt hole nearer the edge of the plate finds correspondence in the head. or burr of a bolt shown in Fig. 3 forward, and a little to the left of the central bolt on the rear of the tongue.  When both bolts are used the connection is rigid, and there is no pivot.  Then he says in his specification:

"The numeral 3 indicates the preferred form of coupling element or bracket employed, and to which the rear end of the tongue is pivotally connected, so that the tongue and the staggered furrow-wheel carried thereby may swing in the proper direction to facilitate the turning of the plow."

The reason for his preference is easy to see.  If the turning pivot is located at that point, the turn would be made without swinging the discs; whereas, if the turn is made on the caster wheel behind the body of the plow, all the discs must swing in turning.  This language of the patentee just quoted plainly imports that he does not limit himself to a coupler having a pivotal connection with the tongue.  He gives, as he is required to do by the statute, "the best mode of applying the principle" of his invention.  If there were nothing more, this statement, coupled with the drawings, fairly indicates that he did not limit himself to a bracket having a pivotal connection with the tongue, and he indicates in a way which any mechanic would understand another form of bracket, which would have a rigid connection, and the claims are broad enough to include this form.  This is the form and character of the bracket employed by the defendant.  We find no sufficient reason for denying validity to the Hancock patent, and, no other material distinction between the defendant's organization and that of the Hancock patent than that we have already discussed being pointed out, we think the charge of infringement is sustained.

As these conclusions are in accord with those of the Circuit Court, its decree will be affirmed.