## READ MACHINERY CO. v. JABURG et al.

(District Court, S. D. New York.   March 4, 1914.)

### No. 7/88.

1. PATENTS (§ 26*)—"INVENTION"—COMBINATION OF OLD ELEMENTS.
    "Invention" may be shown in a combination of old elements, where they coact to produce a novel and improved unitary result.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*
    For other definitions, see Words and Phrases, vol. 4, pp. 3749–3754.]

2. PATENTS (§ 51*)—"ANTICIPATION."
    To establish "anticipation" of a patent, it is necessary that the defendant show that all of the elements of the patented device or their mechanical equivalents are found in the same description or machine, where they do substantially the same work by substantially the same means.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 66–69, 72, 74; Dec. Dig. § 51.*
    For other definitions, see Words and Phrases, vol. 1, p. 411.]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CAKE MIXING MACHINE.
    The Read patent, No. 966,765, for a cake mixing machine, while for a combination of old elements, was not anticipated and discloses invention, and the machine is of great utility as shown by its wide acceptance and use by practical bakers.   Also, held infringed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Read Machinery Company against John Jaburg and Hugo Jaburg. On final hearing. Decree for complainant.

Edmund Wetmore and Oscar W. Jeffery, both of New York City, for plaintiff.

A. G. N. Vermilya, of New York City, for defendants.

HUNT, Circuit Judge. The Read Machinery Company, assignee of Harry Read, charges John Jaburg and Hugo Jaburg with infringement of letters patent No. 966,765, issued August 9, 1910, alleged to cover certain new and useful improvements in cake mixing machines. The purposes and advantages of the device patented are stated and described in the application as follows:

"The object of the present invention is to improve the mechanical construction of such cake mixing machines, and in particular to provide an efficient and effectively disposed mechanism for operating the beater, a mechanism for changing the speed of rotation of the beater in mixing batches of material of varying consistency, a mechanism whereby the machine is stopped when it is desired to change the speed, and in means for moving the bowl into and out of engagement with the beater. * * *

"The construction illustrated and described possesses advantageous features. Among these may be mentioned the ease with which the parts may be constructed and assembled and thereafter adjusted, and the compactness and simplicity of the cake mixer as a whole. In a cake mixer of this type it is desirable not only that the speed should vary in order to facilitate the working of batches of goods of greater or less consistency, but also as a means of gradually furthering the process of aeration of certain kinds of goods required to be exceedingly light and spongy."

The acts of infringement claimed are the sale of cake mixing machines embodying the combinations set forth in the sixth and tenth claims of the patent in suit. Those claims read as follows:

"6. A cake dough mixing machine, comprising a standard, a bowl, a bowl support movably mounted thereon, a vertical screw engaging said bowl support for adjusting the position thereof, a beater, a main shaft, an auxiliary shaft parallel with the main shaft, speed changing gears interposed between the main shaft and the auxiliary shaft and a mechanism whereby the gears of one shaft may be shifted and brought into and out of engagement with the gears of the other shaft to alter the speed of the beater."

"10. In a dough mixer, a standard, a bowl, a bowl support movably mounted thereon, a vertical screw engaging said bowl support for adjusting the position thereof, a beater adapted to operate within the bowl, means for rotating the beater upon its axis and moving the same in a circular path in said bowl, a main drive shaft, an auxiliary shaft arranged parallel to the main shaft, complementary speed change gears mounted on the main and auxiliary shafts, and means for selectively combining said gears in operative relation."

Defendants allege that their cake mixers are made in accordance with letters patent No. 989,733, issued to them as assignees of Harry E. Townsend; that during the course of prosecuting the application for the patent in suit plaintiff acquiesced in the rejection of claims and amended the specification and claims in such manner that he estopped himself from ever claiming any construction of the patent which would include within its scope any article made, sold, or used by the defendants; that others within the United States have been making and selling, without hindrance or interference on the part of plain-

tiff, articles as fully within the terms of the claims of the patent as is any device made by defendants, whereby plaintiff is estopped from claiming infringement on the part of defendants; and that in view of the state of the art there was no invention and that the several elements of the claims of the alleged letters patent constitute only aggregations of old elements and no real combination.

The operation of the Read machine may be stated in this way: The power is applied to the flywheel which turns the main shaft; the gears on that shaft mesh with gears on the gear box which in turn are attached to the handle which projects from the front of the machine. Those gears mesh with gears on the auxiliary shaft so that the gear box may be turned by means of the handle to bring the gears in mesh in any one of the three speeds provided for; the power is transmitted through the gears referred to, through the auxiliary shaft, and on through the bevel gear mounted on the end of the auxiliary shaft and other gears provided therefor to the beater shaft which is mounted off the center of the bowl. The beater shaft is provided with a pinion meshing with a hollow gear, giving a planetary motion to the beater. Thus, power is transmitted from the flywheel to the beater so as to impart the necessary motion to the beater and to provide for change of its speed. By means of a vertical screw the bowl support holding the bowl is raised and lowered and the beater can be put at any depth in the mass which may be proper. Thus, the beater may be started on top of the batch of material and gradually pressed down on and through the mass, and the speed of the beater may be changed during this operation. The handles for changing the speed and raising the bowl are conveniently located at the front and top of the machine. The difference between mixing butter and sugar together and kneading flour was explained by one of the witnesses, who made it clear how important it is in manipulating materials such as go into the bowl that there shall be an opportunity to change the speed quickly, and how with the Read machine the operator stands with his hand on the screw and feeds it up gradually so as to incorporate the material by degrees, and as a higher speed is called for the gear box may be shifted in position by the handle in front and a higher speed given to it. The practical advantages of the machine appear to be: The saving of labor, economy in material, cleanliness and expedition, and its adaptability for use with mixtures of varying consistencies found in a bake shop.

It can be said that, although the patent for the cake mixing machine is a combination of generically old elements, under a well-established doctrine, if such parts or elements are so arranged as to unite in producing a novel and useful result, the combination as a whole is patentable. "The ease with which the parts can be constructed and assembled and thereafter adjusted and the compactness and simplicity of the cake mixer as a whole" is a recital of one of the advantages of the device; and the evidence clearly shows that the method of varying the speed in accommodation to the mixing of batches of dough is efficient. Obviously it is of great advantage to bakers that their workmen and material should be protected from grease and dirt

in any machine used for mixing dough. It is unnecessary to elaborate upon the advantages which bakers ascribe to the machine further than to say that they regard it as safe, simple, and capable of mixing any mixture, whether heavy or light, used in a bake shop, and to do it thoroughly and fast.

[1] Aggregation, as I understand it, will not apply where there is a combination of elements capable of coacting to produce a unitary result, provided such coaction produces novel and improved results which are useful. Forbush v. Cook, 2 Fish. 669, Fed. Cas. No. 4,930. Plaintiffs are well sustained in the proposition that if selected elements are adapted to a useful result, and an inventor utilizes such adaptability by uniting it with other elements of the combination to form a novel whole, invention may be claimed. National Cash Register Co. v. American Cash Register Co., 53 Fed. 372, 3 C. C. A. 559; San Francisco Bridge Co. v. Keating, 68 Fed. 351, 15 C. C. A. 476. Taken by itself the change speed device of the patent in suit would operate without the presence of the vertical screw, yet as said in the National Cash Register Co. Case, supra, each of the several elements in coaction does its appointed share toward effecting the single result achieved by the co-operation of all and demonstrates that each is, by the co-operation of the others, capacitated to contribute, by acting in its own peculiar way, to the common end.

[2] Upon the contention that there has been anticipation it is necessary, as I understand it, that the defendant shall show that all of the elements of the plaintiff's patent, or the mechanical equivalents, are found in the same description or machine where they do substantially the same work by substantially the same means. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 93 C. C. A. 561.

[3] Applying this rule, defendant cannot prevail merely because there is in the present case a vertical screw in one of the former patents or publications offered in evidence, and speed change gears in another, and so on as to the various parts of the combinations of the sixth and tenth claims of the patent in suit. All of the parts of each combination in a single machine co-operating to produce the same result as is accomplished in the Read machine must be proved in order to justify the conclusion that the Read patent is invalid for lack of patentable novelty. And while there is testimony to the effect that there may be a substitution of some different member of the same class of devices as that of some particular device shown and described in the patent, still such showing does not negative the invention, particularly where such substitution, if attempted, would involve a substantial total reconstruction of the whole machine and still fail in producing the result achieved by the patent. In Cohn v. U. S. Corset Co., 93 U. S. 366, 23 L. Ed. 907, the Supreme Court said anticipation would not be had "unless the prior patent describes the invention of the later one so fully that one acquainted with the art as it stood at the date of the prior patent could, without invention or assistance from the latter patent, practice it."

A vertical screw and a rack and pinion are not mechanical equivalents in the situation or environment wherein they are used in the

patent under examination. As pointed out in the testimony, the use of the vertical screw accomplishes a result advantageous in the Read machine and one which the rack and pinion will not achieve. It was explained by Prof. Main that for each revolution of the pinion the rack is shifted for a distance equal to the circumference of the pinion which, with machines the size of those here involved, would be several inches, while for each revolution of the screw the distance would be about a quarter of an inch; so that the movement of a screw is much slower, more powerful, and far more accurate than that of a rack and pinion, and when the screw is stopped it stays there. It therefore takes the place of a ratchet and pawl which would be required to hold the rack and its attachments in a given place after the pinion had been revolved for a certain distance. Stiff mixtures have to be fed up gradually in order to avoid throwing the stuff about, and when a rack and pinion is used, especially by operatives not skilled mechanically, the tendency would be always to bring it up too fast and to break beater blades. He also explained the use of the two devices on ordinary machinists' lathes where it is clear they are not equivalents.

Cone pulleys and speed change gears may be equivalents for transmitting power, but the cone pulley with its belt cannot be substituted for the change speed gears on the Read machine, because, as explained by one of the witnesses, it would be necessary to shift the belt, which would either involve stopping the machine or impose risk on the operator and require him, according to the usual way, to shift the belt with his hands and to start the belt upon another step of the pulley. This manipulation would require care and time and would necessarily dirty the fingers of the operator. Furthermore, in a bake shop where the mixture when started is heavy and stiff, slow motion is required in the beginning, and thereafter the speed accelerator is called into use by shifting the handle, the operator dropping it over to one side and giving it a shove and dropping it into place again without soiling his hands. The gear box is therefore for practical purposes an essential feature of the construction, economical in its use of space and free from the objectionable ground of dirt.

Referring to what is called the auxiliary shaft of the Read machine, it appears that at the front end of such shaft is the pinion which gives the motion to the planetary mechanism whereby all changes of speed are effected through such auxiliary shaft at all times. The different speeds of such shaft are obtained by the intermediate gear box mechanism which drops into gear with either one or the other of the different gears there provided. In the Lynn Superior machine, upon which the defense can rest its strongest contention of anticipation, when a gear specifically referred to was thrown to the left only slow speed and no other was obtained, and a short parallel shaft shown in the mechanism of the Lynn Superior machine is not used in the sense that it is in the description of the Read patent and in the specifications of the patent which describe the auxiliary shaft. An essential difference seems to be in there being no mechanism between the two shafts of the Lynn Superior machine for obtaining dif-

ferent speeds as there is in the Read machine; but we have to go to the other end of the machine to find the mechanism for obtaining other speeds, which are not obtained by gears mounted on main and auxiliary shafts.

The Read patent should not therefore be defeated because of the law of equivalents, for, as already explained, there could be no substitution for the change speed gears of the Read patent by the use of cone pulleys in the sense that the cone pulleys and the speed gears are equivalents. With respect to the mechanism for obtaining different speeds, there is no great variance between the testimony of the several experts. When the handle of the Read machine with its gear box is moved to its different positions and thrown into mesh with the gears on the main and auxiliary shafts, the speed of the beater on its axis and the speed of the beater around the bowl are changed; while in the Lynn Superior machine the speed of the beater around the bowl is fixed by the operator moving the gear into position, and then by the handle at the other end of the machine the speed of the beater on its axis is changed. The contention that the change speed gears of the Lynn Superior machine in themselves are means for selectively combining the change speed gears in operative relation is not persuasive, for in the Read machine the handle and mechanism attached are the means and mechanism required by the claims of the patent and are an improved and useful element in the machine. There is a difference in design and construction between the change speed mechanism of the Lynn Superior machine and the change speed machanism of the Read patent; and it was satisfactorily explained to my mind that in order to enable the Lynn Superior machine to accomplish the results of the Read machine, or to make it into the combination shown in the patent of the Read machine, radical changes would have to be made.

The specifications of the patent are to be resorted to in ascertaining what is meant by the terms used in the claims, and under the rule that the claims of the patent are to be fairly construed so as to cover if possible the invention, especially if it be a meritorious one, phrases used in the claims should receive a restricted construction with due regard to the environment of the thing described and to the purposes set forth in the specifications and drawings of the patent. Walker on Patents, 117a; Mossberg v. Nutter, 135 Fed. 95, 68 C. C. A. 257.

It appearing that there is a radical difference between the Lynn Superior and the Read machines in the mechanism referred to, the question whether or not the Lynn Superior machine was an abandoned experiment becomes immaterial.

It is significant that prior to the devising of the machine described in the Read patent no machine had done the work and obtained the results of Read's machine. Practical bakers clearly establish this fact, and dealers in mixing machines give evidence of the great commercial success of the Read device. Having due regard to the presumption of validity arising from the patent, the success it has attained, the nonexistence of any anticipation, and the adoption of it

by the defendants with express notice of the patent, lead me to think that the claims under consideration should be held to be valid. Sanders v. Hancock, 128 Fed. 424, 433, 63 C. C. A. 166.

Infringement is proven. Differences of a slight character are to be found in defendants' structure from that of the patent, but they are immaterial. When claims 6 and 10 are read on the defendants' machine, they apply, and the words "mechanism," in claim 6, and "means," in claim 10, indicate the parts of the combination which give motion to other parts and which do a specified part of the work in the combination. The change speed mechanism in the defendants' machine is substantially the same as that in the Read patent, notwithstanding the fact that, instead of two gears mounted on the main shaft and two on the auxiliary shaft, defendants' machine has four gears mounted on the auxiliary shaft and one on the main shaft. The method of operation and the principle of the change speed devices of the patent in suit and the defendants' machine are identical. There is also some difference in the means by which the so-called planetary movement of the beater is obtained in the defendants' machine, in that, instead of a fixed hollow gear as described in the patent in suit, defendants' machine has two beveled gears revolving in opposite directions; yet the planetary movement is not changed.

There was a point made by the defendant with respect to the necessity for stopping the machine of the patent in suit when the speed is changed. Power is cut off from the beater or auxiliary shaft during the instant required for the movement of the handle which is used in changing the speeds. When the handle is down so that the gears are not in mesh, no connection exists between the main shaft and the beater shaft; but the main shaft is running if the power is not turned off, and the time consumed by an experienced operator in turning the handle is only a fraction of a second. It was shown that the drawings of the patent illustrate a worm meant to turn the belt onto a loose pulley which would stop the machine during the operation of changing speed. The evidence is that in actual practice this has been dispensed with, and, as this feature is no part of either of the claims involved in the present suit, it is not important that it be dwelt upon. The defendant's machine, however, operates as does the Read machine; that is to say, when the operator turns the handle, the path of the power from the flywheel to the beater is broken and the power is interrupted for the instant required to change the speed. It would therefore be correct to say that the machine is not stopped for part of it is still in motion, although there is an interruption of the operation of the beater, very slight, and apparently of no consequence in the performance of the work.

The foregoing views dispose of what appear to be the real points in the case.

In conclusion, I find that claims 6 and 10 of the patent in suit show a combination not contained in the any prior patent, publication, or machine which achieved a new and useful result and was followed by decided commercial success, and that defendants have appropriated the said combination and so infringed upon the patent. Decree for

injunction and accounting before a master, as is usual in such cases, is ordered, subject to the obligation of any stipulation heretofore entered into waiving damages or profits on account of any machine manufactured by the Triumph Manufacturing Company previous to the filing of the bill of complaint herein.